# EXHIBIT A

Case 2:22-cv-03667 Document 1-1 Filed 05/27/22 Page 2 of 24 Page ID #:11
DocuSign Envelope ID: Electronically Filed by Superior Court of California, County of Orange, 04/25/2022 10:53:09 AM.
30-2022-01256312-CU-FR-CXC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Georgina Ramirez, Deputy Clerk.

**AEGIS LAW FIRM, PC**
KASHIF HAQUE, State Bar No. 218672
SAMUEL A. WONG, State Bar No. 217104
FAWN F. BEKAM, State Bar No. 307312
9811 Irvine Center Drive, Suite 100
Irvine, California 92618
Telephone: (949) 379-6250
Facsimile: (949) 379-6251
E-Mail:     fbekam@aegislawfirm.com

Attorneys for Plaintiff Brent Dennard, individually
and on behalf of all others similarly situated

Assigned for All Purposes
Judge Randall J. Sherman
CX-105

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

| | |
|---|---|
| BRENT DENNARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VIVID SEATS LLC; and DOES 1 through 20, inclusive,<br><br>Defendant. | Case No.  30-2022-01256312-CU-FR-CXC<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.    Violations of California Business and Professions Code §§ 17500, *et seq.*;<br><br>2.    Violations of California Business and Professions Code §§ 17200, *et seq.*; and<br><br>3.    Violations of California's Consumers Legal Remedies Act, Civil Code § 1750<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiff Brent Dennard, individually and on behalf of all others similarly situated,

2    brings this Class Action against Defendant Vivid Seats LLC and DOES 1 through 20

3    ("Defendants" or "Vivid"). Plaintiff, by and through counsel, make the following allegations

4    pursuant to the investigation of counsel and based upon information and belief, except as to

5    allegations specifically pertaining to himself, which are based on personal knowledge:

6    ## NATURE OF ACTION

7    1.    Defendant Vivid lures consumers into purchasing tickets for sporting events,

8    concerts, and live shows from its website and mobile application by advertising artificially low

9    ticket prices while hiding the amount of fees it charges for each sale. Specifically, Vivid

10   advertises misleading ticket prices that do not include added fees. Only at checkout does Vivid

11   for the first time list a total amount that includes hidden service and delivery fees—after

12   consumers have already selected seats at a lower advertised price (that does not include fees),

13   created a Vivid account or entered login credentials, entered credit card information, and made

14   the decision to buy.

15   2.    Further, rather than itemizing those fees at checkout on its mobile application,

16   the amount of additional fees included in the total purchase price is hidden in a separate link.

17   Because Vivid intentionally hides additional fees in a separate link that is not automatically

18   presented to customers as part of the transaction, reasonable consumers are drawn in by

19   deceptively low ticket prices advertised in an initial search, and then proceed through check out

20   without ever becoming aware of the amount of the so-called "service" and "electronic transfer"

21   or "mobile delivery" or "Flash Seats" fees that have automatically been included in the total

22   price.

23   3.    Even if a customer does go through the additional effort of identifying and

24   clicking on the pricing details link, many consumers, now invested in the decision to buy,

25   nonetheless buy at the inflated price, even though that was not what they thought they had

26   bargained for.

27

28

-1-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

4.      By hiding added fees in a link at the very last step of the sale, Vivid has raked in millions of dollars in ticket sales and in hidden additional fees at the expense of consumers drawn in by artificially low ticket prices.

5.      As a result of Vivid's false advertising, Plaintiff and the proposed class have suffered damages. They purchased tickets they would not otherwise have bought, and paid fees they would not otherwise have paid, had they not been drawn in by Vivid's deceptively low ticket prices.

6.      Vivid's misleading advertised ticket prices and bait-and-switch scheme constitutes false and misleading advertising in violation of California's Unfair Competition Law (the "UCL") (Cal. Bus. & Prof. Code § 17200) and California's False Advertising Law (the "FAL") (Cal. Bus. & Prof. Code § 17500).

### JURISDICTION AND VENUE

7.      This is a class action pursuant to California Code of Civil Procedure § 382. The monetary damages and restitution sought by Plaintiff exceeds the minimal jurisdictional limits of the Superior Court and will be established according to proof at trial.

8.      This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, § 10, which grants the Superior Court original jurisdiction in all causes except those given by statutes to other courts. The statutes under which this action is brought do not specify any other basis for jurisdiction.

9.      This Court has jurisdiction over all Defendants because, upon information and belief, they are citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

10.      Venue is proper in this Court because, upon information and belief, Defendants reside, transact business, or have offices in this county, and the acts and omissions alleged herein took place in this county.

### THE PARTIES

-2-

11. Plaintiff is and was a resident of California at all times relevant herein.

12. Defendant Vivid is a corporation organized and existing under the laws of the State of Delaware, doing business in the State of California, with its headquarters in the City of Chicago, Illinois.

13. Plaintiff is unaware of the true names or capacities of the defendants sued herein under the fictitious names DOES 1 through 20, but will seek leave of this Court to amend this Complaint and serve such fictitiously named defendants once their names and capacities become known.

14. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 20 are or were the partners, agents, owners, shareholders, managers, or employees of Defendants at all relevant times.

15. Plaintiff is informed and believes, and thereon alleges, that each defendant acted in all respects pertinent to this action as the agent of the other defendant, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each defendant are legally attributable to the other defendant.

16. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, Defendants and/or DOES 1 through 20, acting as the agent or alter ego for the other, with legal authority to act on the other's behalf. The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

17. At all relevant times, Defendants, and each of them, acted within the scope of such agency or employment, or ratified each and every act or omission complained of herein. At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

18. Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

///

-3-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

## **GENERAL ALLEGATIONS**

### **Vivid's "Bait-and-Switch" Pricing Scheme**

19.     Vivid is one of the many online ticket exchange websites that offer consumers the ability to purchase tickets for sports, concerts, and other live entertainment events.

20.     Consumers can use the Vivid website (https://www.vividseats.com) or mobile application to search for and purchase tickets to events happening across the country.

21.     Vivid advertises artificially low ticket prices to gouge consumers with hidden added fees through a deceptive bait-and-switch scheme that misleads consumers as to the actual price of tickets purchased through Vivid's website or mobile application.

22.     Vivid charges additional fees above and beyond the advertised prices of the tickets sold on their website and mobile application. These hidden fees are not disclosed when the initial ticket price is displaced. In fact, Vivid does not disclose these fees to consumers until the very last step in the purchase—after the consumer has already gone through several steps to commit to the purchase by searching for tickets, selecting seats, creating or logging into a Vivid account, and making the decision to buy.

23.     To make matters worse, even at the point of purchase, Vivid still does not disclose the amount of additional fees charged in its mobile application. Instead, Vivid's mobile application displays only a total purchase price that includes both the ticket price and the fees. Consumers are required to either click on an additional link to find out the amount of additional fees assessed.

24.     Even if a consumer does go through the additional effort of identifying and clicking on the additional link, Vivid merely lists a total amount that it claims represents "service" and "electronic transfer" or "mobile delivery" or "Flash Seats" fees. The same total amounts are listed at check out on Vivid's website, where it merely lists a total amount that it claims represents "service" and "electronic transfer" or "mobile delivery" or "Flash Seats" fees.

25.     The fees, unlike taxes or standard shipping fees, are not a set fee amount or even a set percentage on every purchase. Instead, they can range from approximately 30% to 60% of the ticket cost. Since the fees range dramatically, consumers cannot predict the amount of the

-4-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

1   fee that will be added to the total amount until after they have already gone through several

2   steps and made the decision to buy.

3         26.    Moreover, tickets purchased through Vivid are often accessed through digital

4   downloads. There is no reason why Vivid would incur expenses to deliver a digital download.

5   Thus, it can be inferred that the fees do not compensate Vivid for any particular expense related

6   to delivery of the tickets. Instead, the delivery fees are pure profit-generators.

7         27.    Because Vivid's ambiguous fees are not based on a standard fee amount or even

8   a set percentage, they are unlikely to be accurately anticipated by consumers—unlike taxes or

9   standard shipping fees.

10         28.    The fact that the amount of fees varies suggests that the total fees are not

11   tethered to any actual service or expense. Therefore, it can be inferred that the fees do not

12   compensate Vivid for any particular service or any particular expense, and that the fees are pure

13   profit-generators.

14         29.    Vivid never discloses to consumers that the service and delivery fees it assesses

15   on tickets are purely profit generators. It intentionally omits this important information.

16         30.    Vivid's deceptive pricing scheme is accomplished in the manner depicted

17   below.

18         31.    On the Vivid website, ticket pricing is advertised during the consumer's initial

19   search for tickets. For example, a consumer seeking to purchase tickets for the Formula 1

20   Miami Grand Prix on May 8, 2022 would see tickets advertised at $1,804 per ticket:

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

-5-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2



32.     After a consumer selects the tickets, Vivid continues to advertise the same ticket price that came up in the initial search:

///

///

///

///

-6-

Exhibit A, Page 15

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2



33. After clicking the "Checkout" button, consumers are required to either login to an account, or to create one by entering their email address. The ticket price is still listed at the same price that came up in the initial search:

///

///

///

///

///

///

///

-7-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

1
2
3
4
5
6
7
8
9
10



**Formula 1 Miami Grand Prix - Sunday**

**Miami International Autodrome - Miami Gardens, FL**

**Sunday May 8, 2022 TBD**

**Ticket Details**

**Section: Beach Grandstand N15**

**Row: 15**

**Notes: XFER Please note that you will need to use an iOS or Android mobile device to gain entry to your event.**

**Price: $1,804.00 each**
**Quantity: 2**

11    34.    Only then, after a consumer logs in into their account or creates one, is the total

12   price displayed. In the example above, the price of two $1,804.00 tickets becomes $4,470.64.

13   The fees are not itemized or disclosed at any time before on a traditional computer browser.:

14   ///
15   ///
16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

-8-

CLASS ACTION COMPLAINT

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

**Formula 1 Miami Grand Prix - Sunday**

**Miami International Autodrome - Miami Gardens, FL**

**Sunday May 8, 2022 TBD**

**Ticket Details**

**Section: Beach Grandstand N15**

**Row: 15**

Notes: XFER Please note that you will need to use an iOS or Android mobile device to gain entry to your event.

Price: $1,804.00 each
Quantity: 2

Mobile Tickets   ⌄

☑ 100% Buyer Guarantee   ⌄

Apply a Gift Card or Promo Code

| | |
|---|---|
| Ticket Total | $1,804.00 x 2 |
| Service Total | $563.82 x 2 |
| Electronic Transfer | $5.00 |

**Total Charge**                    **$4,740.64**

35.     On Vivid's mobile application, the total price is not disclosed unless a consumer enters their credit card information and billing address:

///

///

///

///

///

///

-9-

Exhibit A, Page 18

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2



36.     Even then, the additional fees are not disclosed at all unless the consumer selects the "show pricing details" link next to the total price at check out, several steps into the buy-flow process:

///

///

///

///

///

-10-

CLASS ACTION COMPLAINT

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2



37.     Therefore, by the time consumers are confronted with a total price that includes added fees, they have already taken several steps to commit to the transaction, including

-11-

Exhibit A, Page 20

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

1  searching for tickets, selecting seats, creating or logging into an account, making the decision
2  to buy, and entering their credit card information and billing address. And, in order to see the
3  amount of fees in Vivid's mobile application, consumers are required to take the additional step
4  of identifying and clicking the "Show pricing details" link next to the total price.

5      38.    In essence, Vivid's pricing scheme is a classic form of "bait-and-switch"
6  advertising.

7      39.    In a bait-and-switch scheme, consumers rely on the deceptive advertising to
8  decide to buy merchandise. Then, even if the deception is revealed after making the additional
9  effort to click on the link, the consumer, now invested in the decision to buy and swept up in
10 the momentum of events, nonetheless buys at the inflated price, despite his or her better
11 judgment. Such false and misleading advertising is actionable under California consumer
12 protection laws.

13     40.    Vivid is a large online retailer that is sophisticated with respect to advertising.
14 Vivid knows (or should know) that its pricing practices operate as a bait-and-switch.

15     41.    In fact, Vivid advises its sellers that "[y]ou can set your price for as much or as
16 little as high or as low as you'd like want [sic]. If you want them your tickets [sic] to sell
17 quickly, setting them at a lower price will greatly increase your chances." Vivid therefore
18 knows perfectly well that consumers are influenced by the ticket prices that are displayed prior
19 to the checkout screen, such as when the consumer searches for tickets and selects seats.

20     42.    Vivid also knows that its pricing practices divert business to it that would
21 otherwise have gone to its competitors.

22     43.    It is indisputable that the price of tickets sold by Vivid is material.

23     44.    It is also indisputable that the fact that the price of tickets advertised by Vivid on
24 its website and mobile application does not match the total purchase price of the tickets and is
25 material to the consumers to whom the advertising was and is directed.

26     45.    The fact that Vivid's fees are profit generators, rather than intended to
27 compensate it for any particular service or for any particular cost associated with the ticket, is
28 also material to the consumers to whom the advertising was and is directed.

-12-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

46.     Unsurprisingly, many consumers have been duped into purchasing tickets from Vivid by its false and misleading pricing practices.

47.     All consumers who have been enticed into purchasing tickets from Vivid by the pricing practices described in this Complaint have suffered damage as a result of Vivid's false and misleading pricing practices.

48.     The consumers who purchased tickets from Vivid suffered damage in the amount of hidden fees that they paid, in amounts that will be proven at trial.

**The National Advertising Division of the Better Business Bureau Recently Condemned the Same Advertising Practices Used by Vivid**

49.     The National Advertising Division (the "NAD"), administered by the Better Business Bureau, monitors national advertising for truth and accuracy.

50.     Recently, the NAD reviewed one of Vivid's direct competitors, StubHub, and its identical advertising scheme. Specifically, the NAD reviewed the issue of whether consumers could be misled about the total cost of StubHub's tickets, including the pricing details of all fees, because the fees are not disclosed when the initial ticket price is displayed.

51.     Based on its review, the NAD recommended that StubHub disclose the additional fees and taxes applied to each ticket purchased.

52.     In its recommendation, the NAD emphasized that "the initial advertising interaction between a consumer and an advertiser should be truthful as this initial contact affects consumer behavior and determines whether the consumer will choose to learn more about the product and ultimately make a purchase."[1]

53.     The NAD also noted that consumers seeking to compare prices before making a purchase lacked material information about the fees charged from competing online ticket vendors.

---

[1] *See* NAD Press Release dated January 16, 2018, available at https://bbbprograms.org/archive/nad-refers-stubhub-pricing-claims-to-ftc-for-further-review-after-advertiser-declines-to-comply-with-nad-decision-on-disclosures

-13-

54.     The NAD has routinely held that information that is material to a claim must be clearly disclosed in close proximity to the claim.

55.     The NAD also concluded that, if material fees are added to the ticket price at check out, those fees should be disclosed clearly and conspicuously when the initial price is advertised.

**Vivid's Pricing Practices Do Not Comply with FTC Guidance**

56.     Vivid's pricing practices do not comport with FTC guidance on online advertising and sales, further demonstrating that Vivid's practices are deceptive and unfair.

57.     In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website or mobile application, and the consumer will be completing the transaction online, disclosures should be provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart."[2]

58.     In Vivid's case, according to this guidance, the additional fees should be disclosed before the consumer has to select a seat or click "continue." Instead, the fees are not disclosed until the very end of the transaction, after the consumer has already provided his or her information and made the decision to buy.

59.     According to the FTC, disclosures that are an integral part of a claim or inseparable from it should not be communicated through a hyperlink. "This is particularly true for cost information . . . [I]f a product's basic cost (e.g., the cost of the item before taxes, shipping and handling, *and any other fees* are added on) is advertised on one page, but there are significant additional fees the consumer would not expect to incur in order to purchase the product or use it on an ongoing basis, *the existence and nature of those additional fees should*

---

[2] Fed. Trade Comm'n .com Disclosures: How to Make Effective Disclosures in Digital Advertising, at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf

-14-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

*be disclosed on the same page and immediately adjacent to the cost claim*, and with appropriate prominence." (emphasis added)."[3]

60.     Instead of following the FTC's practices, Vivid hides its fees in its mobile application behind a hyperlink. Worse, the hyperlinks that Vivid uses do not convey the importance, nature, or relevance of the fee information. According to the FTC, hyperlinks that simply say "more information" or "details" do not adequately disclose the information to which they lead. Vivid's hyperlinks, which are just labeled "Show pricing details" do not adequately disclose that they contain information about the fees charged by Vivid.[4]

## Named Plaintiff's Claims

61.     Plaintiff has used Vivid to purchase tickets on at least one occasion.

62.     On March 22, 2022, while residing in California, Plaintiff searched for tickets to a Cincinnati Reds versus Los Angeles Dodgers baseball game.

63.     Through his search, Plaintiff identified two tickets at the price of $21 each available through Vivid. Relying on the $21 price, Plaintiff selected the tickets to purchase. After he selected "Checkout," Vivid prompted him to create an account, which he did.

64.     Only after Plaintiff selected the tickets, created an account, entered his billing information, made the decision to buy, and clicked through Vivid's platform to the final purchase page did Vivid finally reveal that the total price of his tickets two $21 tickets was actually $59.80.

65.     Plaintiff selected his tickets based on the initial lower price. He relied on the initial lower price in deciding to purchase the ticket. He did not learn of the actual, inflated ticket prices until he reached the final purchase page because Vivid had not disclosed that information to him.

---

[3] *Id.* at 10.
[4] *Id.* at 12.

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

66.     Even though Plaintiff noticed the actual ticket prices were higher than the prices initially advertised, he purchased the tickets at an inflated price because he had already gone through several steps, including selecting his seats and creating an account.

67.     The pressure these events brought to bear on Plaintiff's judgment and played a substantial role in leading him to purchase the tickets he did, even though the price appeared higher than he expected at checkout.

68.     Because he only ever saw a total price after he had gone through several steps of the buying process, he was too far down the road to effectively price shop with other vendors, like Ticketmaster.

69.     If Plaintiff had known that the "fees" he was charged were in fact just a secret profit-generator, unrelated to the cost of actually processing and delivering his ticket purchase, he would not have paid the charge if there was a viable option to purchase tickets without incurring it.

70.     Vivid's deceptive lower advertised price was a substantial factor in causing Plaintiff's decision to buy.

71.     If Vivid were enjoined from waiting until the end to disclose the amount of fees in a hyperlink, and Plaintiff could instead consider the addition and amount of fees at the outset, he would purchase tickets from Vivid again in the future.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action under Code of Civil Procedure § 382 and California Civil Code § 1781, on behalf of all other persons in California who purchased tickets from Vivid during the time period beginning four years before the date of filing of this complaint (the "Class"). Excluded from the Class is Vivid, any parent, affiliate, subsidiary entity, or entity in which Vivid has a controlling interest, officers, directors, and employees of Vivid, members of its immediate families, and its heirs, successors, and assigns.

73.     The Class likely consists of at least thousands of persons who purchased tickets from Vivid in California. The membership of the Class is so numerous and dispersed

-16-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

geographically throughout California that actual joinder of all the Class members is impracticable.

74.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and each member of the Class were exposed to Vivid's false and misleading advertising.

75.    Plaintiff is a proper representative of the Class and will fairly represent and protect the interests of the Class because, among other things, Plaintiff's interests do not conflict with the interests of the Class.

76.    Plaintiff's attorneys are skilled and experienced in complex litigation matters, including class actions.

77.    Common questions of law and fact exist as to all members of the Class and predominate over questions that impact only individual members of the Class such that there is a well-defined community of interest among the class members. Among the many questions of law and fact common to the Class are the following:

    a.   Whether Vivid's pricing practices were and are likely to mislead consumers;

    b.   Whether Vivid's representations in the ticket prices displayed on Vivid's website and mobile application were and are false and misleading;

    c.   Whether Vivid knew or should have known that its pricing practices were and are likely to mislead consumers;

    d.   Whether Vivid knew or should have known that the ticket prices displayed on its website and mobile application were and are false and/or misleading;

    e.   Whether Vivid made and continues to make false or misleading statements of fact concerning ticket prices;

    f.   Whether the facts Vivid failed and continued to fail to disclose in its advertising were and are material;

    g.   Whether reliance on Vivid's misrepresentations and omissions is presumed;

    h.   Whether Vivid's acts alleged herein were unlawful;

-17-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

i.   Whether consumers suffered and continue to suffer damage as a result of Vivid's acts alleged herein;

j.   The extent of the damage suffered by consumers as a result of Vivid's acts alleged herein;

k.   Whether Vivid's acts alleged herein were and are unfair; and

l.   Whether Vivid should be enjoined from continuing to advertise as alleged herein.

78.   In addition, the prosecution of separate actions by members of the Class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Vivid, while adjudications with respect to the Class and Plaintiff would, as a practical matter, be dispositive of the interests of the other members of the Class.

79.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the Class is both numerous and its membership is geographically widespread across California. Furthermore, as the individual damages of any one member of the Class is relatively small, the expense and burden of the individual litigation make it impossible for the members of the Class to redress individually the wrongs committed against them and the damages suffered by them. Plaintiff knows of no difficulty that should be encountered in the management of this litigation that would preclude the maintenance of this suit as a class action.

## FIRST CAUSE OF ACTION

### Violations of California Business and Professions Code §§ 17200, *et seq.*

80.   Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

81.   Vivid's acts alleged herein violate California Business and Professions Code §§ 17500, *et seq.* Vivid acted knowingly, recklessly, and in conscious disregard of the true facts in perpetuating its deceptive advertising scheme and causing injuries to Plaintiff and the Class.

82.   Plaintiff and the Class have been misled and unfairly induced to enter into transactions and to overpay for products. As a result of Vivid's false and misleading pricing

-18-

1   practices, misrepresentations, and omissions, Plaintiff and the Class have been injured in

2   amounts not less than the fees assessed on ticket purchases, which amounts have not yet been

3   ascertained, but which are believed to exceeds the hundreds of thousands, or millions, of dollars

4   in the aggregate. These amounts have been paid to Vivid by Plaintiff and the Class and should be

5   restored to them.

6   **SECOND CAUSE OF ACTION**

7   **Violations of California Business and Professions Code §§ 17200, *et seq.***

8        83.   Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as

9   though fully set forth herein.

10        84.   Vivid has engaged in business acts and practices that, as alleged above, constitute

11   unfair competition in violation of Business and Professions Code §§ 17200, *et seq.* Specifically,

12   Vivid's acts alleged herein are unfair and likely to deceive the general public, and Vivid's acts

13   alleged herein are unlawful in that they violate California Business and Professions Code

14   §§17500, *et seq.* (false and misleading advertising), California Civil Code §§ 1770(a)(9), (13),

15   and (14), and other federal and state statutes and regulations.

16        85.   As a result of Vivid's unfair, fraudulent, and unlawful business practices alleged

17   herein, Plaintiff and the Class have been injured in amounts not less than the amounts they

18   overpaid for tickets due to Vivid's fees, which amounts have not yet been ascertained but which

19   are believed to exceed the hundreds of thousands, or millions, of dollars in the aggregate. These

20   amounts have been paid to Vivid by Plaintiff and the Class and should be restored to them.

21        86.   If Vivid is permitted to continue to engage in the unlawful, unfair, and fraudulent

22   ticket pricing practices described above, its conduct will engender further injury, expanding the

23   number of injured members of the public beyond its already large size, and will tend to render

24   any judgment at law, by itself, ineffectual. Under such circumstances, Plaintiff and the Class

25   have no adequate remedy at law in that Vivid will continue to engage in the wrongful conduct

26   alleged herein, thus engendering a multiplicity of judicial proceedings. Plaintiff and the Class

27   request and are entitled to injunctive relief, enjoining Vivid from continuing to engage in the

28   unfair, unlawful, and fraudulent advertising described herein.

-19-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

**THIRD CAUSE OF ACTION**

**Violations of the California Consumer Legal Remedies Act**

87.     Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

88.     At all relevant times, Plaintiff was a "consumer" as defined by California Civil Code § 1761(d).

89.     At all relevant times, Vivid's tickets constituted "goods" as defined by California Civil Code § 1761(a).

90.     At all relevant times, Vivid constituted a "person" as defined by California Civil Code § 1761(c).

91.     At all relevant times, Plaintiff and each of the class members' purchases of Vivid's goods constituted a "transaction" as defined by California Civil Code § 1761(e).

92.     The CLRA provides that it is unlawful to: (i) advertise goods or services with the intent not to sell them as advertised; and (ii) represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. Cal. Civ. Code §§ 1770(a)(9), (14). Vivid's acts alleged herein violate the CLRA.

93.     On March 23, 2021, Plaintiff sent the demand letter required under Cal. Civ. Code § 1782 to Vivid via certified mail (first class return receipt requested).

94.     Plaintiff, on behalf of himself and the Class, seek damages, restitution, an order enjoining Defendants' unfair or deceptive acts or practices, equitable relief, and an award of attorneys' fees and costs under Cal. Civ. Code §1780(e).

<u>**PRAYER FOR RELIEF**</u>

Plaintiff, on his own behalf and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

1.  For an order requiring Defendants to restore all monies that Defendants acquired from Plaintiff and the Class as a result of their false advertising and unfair, unlawful, and fraudulent business acts and practices;

2.  For an order awarding actual and punitive damages;

-20-

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

3. Interest on all such sums restored at the maximum legal rate;

4. For an order or orders enjoining Defendants from continuing to employ unfair methods of competition and commit unfair and deceptive acts and practices alleged in this Complaint and any other acts and practices proven at trial;

5. For an award of attorneys' fees to Plaintiff's Counsel pursuant to California Code of Civil Procedure § 1021.5 and California Civil Code § 1780(d);

6. For costs of suit incurred in this action; and

7. For such other and further relief as the Court may deem just and proper.

Dated: April 25, 2022                           **AEGIS LAW FIRM, PC**

By: _____
Fawn F. Bekam
Attorneys for Plaintiff Brent Dennard

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: April 25, 2022                           **AEGIS LAW FIRM, PC**

By: _____
Fawn F. Bekam
Attorneys for Plaintiff Brent Dennard

-21-

Exhibit A, Page 30

DocuSign Envelope ID: CF4C49A3-7444-4AE0-8161-3012EBF061A2

## DECLARATION OF BRENT DENNARD

I, Brent Dennard, state and declare:

1.      I have personal knowledge of the facts stated herein, and could and would testify competently thereto if sworn as a witness.

2.      I am a resident of the County of Orange, State of California. The transaction(s) in which I was involved that give rise to the causes of action in the attached Complaint took place in the County of Orange, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on _____4/25/2022_____ at Irvine, California.

DocuSigned by:

*Brent Dennard*

8D425F31EACD455

Brent Dennard

-22-

CLASS ACTION COMPLAINT